**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division**

1:19-CV-20455-FAM

GVB MD, LLC d/b/a MIAMI BACK
AND NECK SPECIALISTS,

        Plaintiff,

v.

BLUE CROSS AND BLUE SHIELD OF
FLORIDA, INC.

        Defendant.

_____ /

## FLORIDA BLUE'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Defendant Blue Cross and Blue Shield of Florida, Inc. ("Florida Blue" or "Defendant"), by and through undersigned counsel and pursuant to Rule 12(b)(6), Fed. R. Civ. P., and Local Rule 7.1, L.R. S.D. Fla., moves the Court for the entry of an Order dismissing the Complaint filed by Plaintiff GVB MD, LLC d/b/a Miami Back and Neck Specialists ("Plaintiff") for failure to state a claim.

## INTRODUCTION

This is a dispute brought by a spinal surgery practice that is dissatisfied with Florida Blue's reimbursement for treatment Plaintiff elected to perform for five patients who voluntarily decided to go out of their network of participating healthcare providers to receive that treatment. Of those five individuals (whom Plaintiff identifies in Exhibit A to its Complaint), three are beneficiaries of ERISA-governed plans and the other two subscribe to FEHBA-governed plans.[1]

---

[1] In Florida, Florida Blue is the entity that administers the Service Benefit Plan (sometimes, the "Plan"), which is a health plan for federal employees that is created by a federal government contract between the U.S. Office of Personnel Management ("OPM") and the Blue Cross and Blue Shield Association ("BCBSA") and is governed by the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. §§ 8901-14. For a more fulsome description of the Service Benefit Plan, see *infra* at pp. 7-10.

Unlike many providers with whom Florida Blue directly contracts for agreed-to services and rates, Plaintiff is a non-participating, out-of-network provider that does not have a contract with Florida Blue.  *See* Complaint ("Compl.") ¶ 27.  Despite having no contractual relationship with Florida Blue, and despite its allegations that it "does not have access to the terms of the Plans applicable to the claims at issue in this case," Plaintiff nonetheless conclusorily alleges that "the terms of the Plans applicable for every claim at issue in this case dictate that these covered services would be reimbursed" and that Florida Blue "either refused to pay the claims altogether, or grossly underpaid" the usual and customary rate for the relevant services.  Compl. ¶¶ 24, 26, 35.  On this feeble basis, Plaintiff asserts a count under ERISA Section 502(a)(1) and a separate but duplicative count for declaratory relief.[2]

For a variety of reasons, Plaintiff's Complaint fails to state a claim and should be dismissed.  First, Plaintiff lacks standing to pursue any claims pertaining to the three individuals whose plans are governed by ERISA because those individuals' benefits plans contain express anti-assignment provisions rendering Plaintiff's purported assignments invalid.  Second, the remaining two individuals whose benefits are at issue in this case are members of FEHBA-governed plans; as to those individuals, ERISA does not apply to their plans and, beyond that, sovereign immunity bars any potential cause of action.

While these arguments alone are sufficient to dismiss this case with prejudice, there are additional independent bases mandating that result as well.  For one, Plaintiff has failed to identify the specific plan term(s) that Florida Blue allegedly breached.  Further, Plaintiff has failed to sufficiently allege exhaustion of administrative remedies.  Plaintiff also cannot seek monetary damages in a claim under § 502(a)(1)(b).  Finally, Plaintiff is not entitled to seek duplicative relief under the moniker of "declaratory judgment."

---

[2]     The Employee Retirement Income Security Act of 1974 ("ERISA") section 502(a)(1)(B) is alternatively identified as 29 U.S.C. § 1132(a)(1)(B) and frequently referred to as such in the relevant case law.  For avoidance of confusion, Florida Blue adopts the convention referenced in the Complaint and refers to this provision as "§ 502(a)(1)(B)."

For any or all of these reasons, Plaintiff's Complaint should be dismissed with prejudice.[3]

## BACKGROUND

According to its Complaint, Plaintiff is a medical practice that performs spine surgery and other related treatments in health care facilities throughout the State of Florida. *See* Compl. ¶ 6.[4]  Plaintiff is a non-participating, out-of-network provider that does not have an express contract with Florida Blue, be it concerning services, payment, or otherwise. *See id.* ¶ 27.  Being out-of-network permits a provider to bill its preferred rate, but the patients who choose to go to an out-of-network provider are responsible for a greater share of such provider's bill, including an obligation to pay any difference between the billed charge and the patient's benefit amount, as calculated under his or her insurance plan. *See id.* ¶ 26 (referencing that the remaining "amount of provider's billed charges" was "Patient['s] Responsibility").

Despite alleging that it "does not have access to the terms of the Plans applicable to the claims at issue in this case," Plaintiff nonetheless also alleges that "the terms of the Plans applicable for every claim at issue in this case dictate that these covered services would be reimbursed," and that Florida Blue "either refused to pay the claims altogether, or grossly underpaid the usual and customary rate for the medical services provided to Defendant[s'] members."  Compl. ¶¶ 24, 26, 35.  In Exhibit "A" to its Complaint, Plaintiff identifies five patients/insureds who it treated and whose allegedly under-reimbursed claims are the subject of

---

[3]     Plaintiff's own intake form reveals Plaintiff's understanding that it might not be compensated by the insurer and the obligations at issue lie not between Plaintiff and Florida Blue but between Plaintiff and its patients: "**I understand that I am financially responsible for my health insurance deductible, my co-pay, the charges not covered by this assignment, *and/or for any and all charges that the insurance carrier declines to pay.***"  Exhibit A (bold emphasis in original).  The intake process is expressly referenced in the Complaint (*see, e.g.*, ¶ 17) and thus the contents of the forms that are a part of that process are incorporated by reference. *See infra* at n. 7.

[4]     For purposes of this Motion to Dismiss *only*, Florida Blue accepts the allegations of Plaintiff's Complaint as true. *See, e.g.*, *Howard v. Kerzner Intern. Ltd.*, No. 12-CV-22184, 2013 WL 5353417, at *3 (S.D. Fla. 2013) ("When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted.").

3

Plaintiff's action.  A.S., A.V., and A.P. are subscribers to ERISA-governed group plans.[5]  M.G. and R.S. are subscribers of the FEHBA-governed Service Benefit Plan.

Plaintiff also generally asserts that "[a]s part of the intake and admissions process at [its facility], the Members execute written assignments of benefits, assigning their rights to receive health benefits under any applicable Plans to [Plaintiff]."  Compl. ¶ 17.  Then, while not explaining what action was taken by whom or when, Plaintiff generically states that after receiving adverse benefit determinations, Plaintiff filed appeals and found the resulting responses unsatisfactory.  *See* Compl. ¶¶ 37-38 ("Miami Back filed internal appeals with Florida Blue seeking reconsideration of its wrongful decisions . . . Defendant failed to respond to the internal appeals in any meaningful way or in other cases refuse to pay usual and customary charges.").

On these general allegations, Plaintiff asserts two counts: one as a claim for benefits pursuant to ERISA § 502(a)(1) and a second duplicative claim for declaratory relief.  Compl. pp. 8-9.  Neither of these counts states a claim upon which relief may be granted, and each should be dismissed.

## LEGAL STANDARD

A complaint may not survive a motion to dismiss unless it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, meaning that a plaintiff must "plead[] factual content that allows the court to draw the

---

[5]     While the patient names are redacted in the Complaint, Defendant has identified the individuals based on the unredacted information in the Member ID column.  A.S. is Member XJ███████479, A.V. is Member XJ███████198, and A.P. is Member XJ███████168.  M.G. is Member R5███040 and R.S. is Member R5███919.  (The "R" prefix denotes membership in a FEHBA plan.)  *See* Declaration of Angela Silva from the Blue Cross Blue Shield Ass'n, a copy of which is attached as Exhibit 1 at ¶3; *see also infra* at n. 7.  (Florida Blue has redacted the full Member ID numbers from this Motion.)

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. And while the Court must accept a plaintiff's well-pleaded facts as true, it need not accept "conclusory allegations, unwarranted deductions of fact[]," *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002), or "legal conclusion[s] couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quotation omitted). Finally, further amendments need not be allowed where they would be futile, as they would be here. *See, e.g.*, *Kondell v. Blue Cross & Blue Shield of Fla., Inc.*, 187 F. Supp. 3d 1348, 1356 (S.D. Fla. 2016).

## ARGUMENT

### I.    As to Three of the Five Insureds, Plaintiff Lacks Standing Under ERISA Because Its Assignments Are Invalid

"The only parties with standing to sue a plan subject to ERISA under [§ 502(a)(1)(B)] are 'participant[s]', 'beneficiar[ies],' 'fiduciar[ies],' and the Secretary of Labor."[6] *Physicians Multispeciality Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1294 (11th Cir. 2004). "Healthcare providers, such as [Plaintiff], are generally not 'participants' or 'beneficiaries' under ERISA and thus lack independent standing to sue under ERISA." *Id.* Providers, however, may "obtain derivative standing through a written assignment from a beneficiary or participant." *Griffin v. Coca-Cola Enters., Inc.* No. 16-13411, 2017 WL 1505308, at *1 (11th Cir. 2017). Nonetheless, "[a]ssignment agreements are generally interpreted narrowly," and "an unambiguous anti-assignment provision in an ERISA-governed welfare benefit plan is valid and enforceable, and will operate to void the assignment." *Id.; Sanctuary Surgical Centre, Inc. v. Aetna, Inc.*, 546 F. App'x 846, 851 (11th Cir. 2013).

Here, Plaintiff alleges that "[u]pon information and belief the Plans did not prohibit the Members from assigning their rights to benefits under the Plans to Plaintiff." Compl. ¶ 47. With

---

[6]    Plaintiff is obviously not the Secretary of Labor, does not allege it is a plan fiduciary and, as a healthcare provider, Plaintiff is not in fact a plan fiduciary. *United Healthcare Servs., Inc. v. Sanctuary Surgical Ctr., Inc.*, 5 F. Supp. 3d 1350, 1362 (S.D. Fla. 2014) (holding healthcare providers are not plan fiduciaries under ERISA); *see also* 29 U.S.C. § 1002(21)(A).

regard to three of the five individuals at the heart of this Complaint, Plaintiff is flat wrong. The terms of these insureds' respective health benefits plans expressly prohibit assignments of the sort from which Plaintiff seeks to derive standing here.[7] A.S.'s plan, for instance, provides that "[Florida Blue] will not honor . . . an assignment of the benefits due to you for Covered Services . . . [or] an assignment of your right to receive payments for Covered Services." *See* Exhibit 2, p. 6-5. A.V.'s plan similarly provides that "[Florida Blue] will not honor . . . an assignment of the benefits due . . . [or] an assignment of a claim for damage resulting from a breach, or an alleged breach, of any promise or obligation." *See* Exhibit 3, p. PRO-5. A.P.'s plan likewise provides that "[Florida Blue] will not honor . . . an assignment of the benefits due to you for Covered Services . . . [or] an assignment of a claim for damage resulting from a breach, or alleged breach, of the 'Group Master Policy.'" *See* Exhibit 4, p. 6-5.[8]

---

[7]     On a Rule 12(b)(6) motion, the Court may consider documents attached to the motion without converting it into one for summary judgment if, as here, the documents are central to the plaintiff's claims and their authenticity is unchallenged. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the court may consider the documents part of the pleadings for the purposes of Rule 12(b)(6) dismissal."). Here, the insureds' benefits plans could not be more central to Plaintiff's claims and there is no challenge to their authenticity (indeed, perhaps Plaintiff should have asked its patients for these documents before providing any services whatsoever). *See Applestein v. Hartford Fire Ins. Co.*, No. 09-CV-22494, 2010 WL 11506018, at * (S.D. Fla. Feb. 25, 2010) (Moreno, J.) ("[The] insurance policy is central to Plaintiff's claim and was attached as an exhibit to [the defendant's] Motion to Dismiss, so it is appropriate for the policy itself to be considered part of the pleadings for the purposes of this Rule 12(b)(6) motion."). As such, Florida Blue incorporates those plans by reference. *See* Exhibits 2-4.

[8]     Moreover, Florida Blue is not estopped and does not waive its right to enforce the plans' anti-assignment clauses by previously remitting payment of the insureds' out-of-network benefits directly to Plaintiff. *See Griffin v. Verizon Commc'ns, Inc.*, 641 F. App'x 869, 873-74 (11th Cir. 2016) (rejecting waiver and estoppel arguments as to the enforceability of anti-assignment clause in ERISA plan). The plans' anti-assignment clauses nullify any attempted assignment of "benefits due," generally, under the pertinent plan, subject only to the statutory requirement that Florida Blue recognize the assignment of the limited right to *receive* direct payment of patients' benefits. Indeed, the Florida legislature expressly recognizes Florida Blue's broad right to limit assignability of its members' "rights under the policy," with a narrow exception authorizing members to assign *their* right to receive "payment of benefits directly" from the insurer.

Under Eleventh Circuit precedent, the benefits plans' respective unambiguous repudiation of any purported assignments from beneficiaries, like A.S., A.V., and A.P., to providers, like Plaintiff, renders the assignment unenforceable, and Plaintiff is without standing under ERISA to assert any of its claims. *See Physicians Multispeciality*, 371 F.3d at 1296 (affirming dismissal of provider's claims under ERISA where unambiguous anti-assignment clause in ERISA plan voided purported assignment); *Coca-Cola*, 2017 WL 1505308, at *2 (same); *Griffin v. Publix Super Mkts., Inc.*, 2016 WL 8999466, at *2 (M.D. Fla. Aug. 2, 2016) (same).

## II.    As to the Remaining Two Insureds With Coverage Under the Service Benefit Plan, Plaintiff Fails to State a Claim for Various Reasons

Plaintiff's claims as to the other two insureds at issue, each of whom receive their health insurance coverage through the Service Benefit Plan, should also be dismissed.

### A.    *Brief Background on FEHBA and the Service Benefit Plan*

In 1959, Congress enacted FEHBA to create "a comprehensive program of health insurance for federal employees." *Empire HealthChoice Assurance, Inc. v. McVeigh* ("*Empire*"), 547 U.S. 677, 682 (2006). To accomplish this goal, Congress vested "significant authority" in OPM, formerly the U.S. Civil Service Commission. *Muratore v. OPM*, 222 F.3d 918, 920 (11th Cir. 2000). Congress vested OPM with broad discretion to establish insurance plans with many different insurers, known under FEHBA as "carriers." *See* 5 U.S.C. §§ 8901(7), 8902-03, 8913.

#### i.    The Service Benefit Plan

One such plan is the nationwide Service Benefit Plan, in which M.G. and R.S. are enrolled. *See* 5 U.S.C. § 8903(1); *see also* Decl. of A. Silva, Exhibit 1 at ¶3. The Plan is formed, pursuant to FEHBA, by federal government contract between OPM and BCBSA. *See generally* 2013 Service Benefit Plan Master Contract (Ex. 5) [hereinafter "2013 Master

---

*Compare* Fla. Stat. § 627.664(1) ("*Subject to the terms of the policy or any contract relating thereto*, an assignment by an insured or by any other owner of rights under the policy is valid" (emphasis added)) *with* Fla. Stat. § 627.638(2) (narrowly limiting insurer's right to prohibit by contract "payment of benefits directly to" provider).

Contract"];[9] *see also* 2014 Statement of Benefits for the Service Benefit Plan at 5 (Ex. 6) [hereinafter "2014 Statement of Benefits"]; 2015 Statement of Benefits for the Service Benefit Plan at 5 (Ex. 7) [hereinafter "2015 Statement of Benefits"]; 2016 Statement of Benefits for the Service Benefit Plan at 5 (Ex. 8) [hereinafter "2016 Statement of Benefits"].[10]   In contracting to establish the Plan, BCBSA acts on behalf of local participating Blue Cross and Blue Shield companies that administer the Plan in their respective localities; Florida Blue is such a company and administers the Plan in Florida. *See, e.g.*, Master Contract § 4.3; 2017 Statement of Benefits at 5; *Helfrich v. Blue Cross & Blue Shield Ass'n*, 804 F.3d 1090, 1092 (10th Cir. 2015).

Under FEHBA, OPM is vested with sole authority to contract for the provision of health plans, to determine the benefit structure of each plan, and to promulgate the official description of a plan's terms in a Statement of Benefits, also known as a "Brochure."  *See* 5 U.S.C. §§ 8902(a), (d), 8907.   The Statement of Benefits is incorporated into the government contract between OPM and BCBSA.  *See* 2013 Master Contract § 2.2(a); *Empire*, 547 U.S. at 684.

ii.    Benefits Disputes Under FEHBA

Under FEHBA, each contract that OPM enters must require the carrier "to pay for or provide a health service or supply in an individual case" if OPM "finds that the employee . . . is entitled thereto under the terms of the contract." 5 U.S.C. § 8902(j).  OPM has implemented this

---

[9]   Plaintiff alleges that it rendered services in 2014-2016.  *See* Compl., Ex. A. Approximately every five years, the OPM-BCBSA contract is restated in what is called a "Master Contract."   The most recent version is from 2013, and that is the Master Contract relevant in this case.  In other years, OPM and BCBSA entered into amendments to the most recent version of the Master Contract.  For the sake of completeness, the 2014, 2015, and 2016 annual amendments to the relevant Master Contract are attached as Exhibits 9 through 11, respectively.

[10]   The Complaint specifically references the insureds' respective plan documents, and the crux of Plaintiff's allegations is that those documents provide benefits for Plaintiff's services and that Plaintiff is entitled to those benefits by virtue of assignments from the Plan enrollees; thus Plaintiff argues that Florida Blue's denial of those benefits is "in violation of the terms of its healthcare insurance contracts."   Compl. ¶ 35; *see also id.* ¶¶ 17, 25-26, 28, 45-46, 50.   The Court can consider the Plan documents because "plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim."  *See supra* n. 10.

provision by establishing a mandatory administrative remedy at the agency for those who believe that the carrier has wrongfully denied benefits.  5 C.F.R. § 890.105; *see also id.* § 890.107(d)(1). The administrative remedy is to be invoked only after exhaustion of all internal appeals (including a right to reconsideration) with the carrier.  *Id.* § 890.105.  If OPM finds that the denial by the carrier is incorrect, the carrier is contractually obligated to pay the benefits. 5 U.S.C. § 8902(j).  If OPM upholds the denial of benefits, the enrollee may bring suit against OPM.  OPM's regulations, however, specifically provide that such lawsuits "must be brought against OPM and not against the carrier or carrier's subcontractors."  5 C.F.R. § 890.107(c).  The remedy in such a lawsuit "shall be limited to a court order directing OPM to require the carrier to pay the amount of benefits in dispute."  *Id.*  The OPM administrative remedy is even open to "medical providers" acting pursuant to an authorization from the enrollee.  *See, e.g.*, 2014 Statement of Benefits at 131; 2015 Statement of Benefits at 135; *see also* 5 C.F.R. § 890.105(a)(2).

The administrative remedy – including the ability to file a lawsuit against OPM – is also described in detail in the Statement of Benefits.  *See, e.g.*, 2015 Statement of Benefits at 134-35. Among other things, the Statement of Benefits makes clear that an enrollee "may recover only the amount of benefits in dispute" and that "[f]ederal law governs [an enrollee's] lawsuit, benefits, and payment of benefits."  2015 Statement of Benefits at 135.

   iii. <u>Funding of the Service Benefit Plan</u>

Under FEHBA, the federal government pays for the majority of the premium cost for each enrollee, with the enrollee paying the remainder.  *See* 5 U.S.C. § 8906(b)(1), (b)(2), (f); *Helfrich*, 804 F.3d at 1092.  All premiums are deposited initially into the Employees Health Benefits Fund within the U.S. Treasury.  5 U.S.C. § 8909(a); *Helfrich*, 804 F.3d at 1092. Carriers of experience-rated FEHBA plans – such as the Plan (*see, e.g.*, 2008 and 2013 Master Contract § 3.3(a)) – do not receive the premiums as they are paid into the Employees Health Benefits Fund in the federal Treasury.  Instead, the premiums for the Plan are placed into a

special letter-of-credit account within the U.S. Treasury fund.  48 C.F.R. § 1632.170(b)(1); *see also id*. § 1652.232-71(d).  The carrier then draws directly from the letter-of-credit account in the U.S. Treasury fund to pay for benefit claims and allowable administrative expenses.  *Id.* §§ 1632.170(b), 1652.216-71(b); *Helfrich*, 804 F.3d at 1092.  Any Plan premiums that are not used to pay benefits and administrative expenses remain the property of the government.  *See, e.g.*, 2013 Master Contract § 3.3; *Helfrich*, 804 F.3d at 1092; *see also Health Care Serv. Corp. v. Methodist Hosps. of Dallas*, Case No. 3:13-CV-4946-B, 2015 WL 11120541, at *12 (N.D. Tex. Jan. 28, 2015).  An experience-rated carrier's profit, if any, comes from a separate, negotiated service charge.  *See Nat'l Ass'n of Postal Supervisors v. United States*, 21 Cl. Ct. 310, 315 (1990), *aff'd*, 944 F.2d 859 (Fed. Cir. 1991); *see also* 48 C.F.R. § 1615.404-4; *Helfrich*, 804 F.3d at 1092.

B.    *Plaintiff Fails to State a Claim Because ERISA*
      *Does Not Apply to the FEHBA Service Benefit Plan*

The Service Benefit Plan is not governed by ERISA, for ERISA explicitly provides that its provisions "***shall not apply to any employee benefit plan if such plan is a governmental plan*** (as defined in section [1002](32))."  29 U.S.C. § 1003(b)(1) (emphasis added).  Section 1002(32), in turn, defines "governmental plan" as, *inter alia*, a "plan established or maintained for its employees by the Government of the United States."  *Id.* § 1002(32).  Thus, Plaintiff cannot state a claim under ERISA as to insureds M.G. and R.S., as each of those patients was enrolled in the Plan.  *See*, *e.g.*, *Ctr. for Reconstructive Breast Surgery, LLC v. Blue Cross Blue Shield of La.*, No. 11-806, 2014 WL 4930443, at *3-4 (E.D. La. Sept. 30, 2014) ("[B]enefits claims for federal employees enrolled in the [Service Benefit Plan] are not governed by ERISA; thus, all of Plaintiff['s] ERISA claims for patients enrolled in the [Service Benefit Plan must be] dismissed.").

C.    *As They Relate to the Service Benefit Plan, Plaintiff's Claims*
      *Are Barred by the Federal Government's Sovereign Immunity*

As explained above, Service Benefit Plan premiums are held in a federal Treasury Fund

10

unless and until they are used to pay for benefits or allowable administrative expenses. Because any amounts Plaintiff seeks as to claims for services rendered to M.G. or R.S. would be paid from that federal Treasury Fund, such claims are barred by the federal government's sovereign immunity.

Sovereign immunity prohibits suits against the federal government and its agents, except where the government has "unequivocally" waived its immunity. *United States v. Nordic Village Inc.*, 503 U.S. 30, 33 (1992). This immunity applies in suits against contractors where the U.S. government is the "real party in interest" – *i.e.*, if the judgment sought against the contractor either ultimately would be satisfied by the federal treasury or would impact a federal program. *Matranga v. Travelers Ins. Co.*, 563 F.2d 677, 677 (5th Cir. 1977); *see generally Dugan v. Rank*, 372 U.S. 609, 620 (1963); *Anderson v. Occidental Life Ins. Co.*, 727 F.2d 855, 856 (9th Cir. 1984) (sovereign immunity depends on whether the federal government is the "real party in interest" – *i.e.*, whether the "recovery would come from the federal treasury").

Courts have long recognized that contractors administering government insurance programs are immunized "to the extent that the government is exposed to financial risk." *Livingston v. Blue Cross & Blue Shield of Ala.*, 788 F. Supp. 545, 548 (S.D. Ala. 1992), *aff'd mem.*, 996 F.2d 314 (11th Cir. 1993). Cases involving the federal Medicare program and the Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS") have found that the United States is the real party in interest and that sovereign immunity bars claims against private carriers that pay covered claims and then receive reimbursement from the federal government. *See, e.g.*, *Matranga*, 563 F.2d at 677-78 (Medicare); *Peterson v. Blue Cross/Blue Shield of Tex.*, 508 F.2d 55, 57-58 (5th Cir. 1975) (Medicare).[11] And importantly, sovereign immunity extends to the FEHBA program as well. *See, e.g.*, *Inspire Malibu v. Anthem Blue*

---

[11] *See also Pine View Gardens, Inc. v. Mut. of Omaha Ins. Co.*, 485 F.2d 1073, 1074 (D.C. Cir. 1973) (Medicare); *Holton v. Blue Cross & Blue Shield of S.C.*, 56 F. Supp. 2d 1347, 1353 (M.D. Ala. 1999) (CHAMPUS); *Vanderberg v. Carter*, 523 F. Supp. 279, 285 (N.D. Ga. 1981), *aff'd mem.*, 691 F.2d 510 (11th Cir. 1982) (CHAMPUS).

*Cross Life & Health Ins. Co.*, No. CV 16-5229, 2016 WL 5746337, at *6-8 (C.D. Cal. Sept. 30, 2016); *Ctr. for Reconstructive Breast Surgery*, 2014 WL 4930443, at *4-5.[12]

That conclusion is not surprising given that the federal government is the "real party in interest" in FEHBA disputes.  *Empire*, 547 U.S. at 709 (Breyer, J., dissenting).  As with other federal benefits programs and plans, the U.S. government, pursuant to FEHBA, bears the financial burden of administering the Service Benefit Plan.  As noted above, the government pays the majority of the premium costs, and collects the rest from enrollees; the total is then deposited in a fund in the federal Treasury.  Florida Blue and the other BCBS companies that administer the Plan in their various states then draw directly from the Treasury funds to cover both the health benefits cost and their Plan-administration expenses.  *See* 48 C.F.R. § 1652.216-71(b); *Helfrich*, 804 F.3d at 1092; *Innova*, 2014 U.S. Dist. LEXIS 12750, at *7, *23-24.

Because federal Treasury funds are used not just for benefit payments but also for administrative expenses, sovereign immunity applies regardless of whether Plaintiff is seeking FEHBA benefits or some other form of damages (although here Plaintiff alleges it is seeking benefits) and regardless of the capacity in which Plaintiff sues (as purported assignee or otherwise).  *See Inspire Malibu*, 2016 WL 5746337, at *7 ("[S]overeign immunity applies regardless of whether a plaintiff is seeking FEHBA benefits or some other form of damages and regardless of whether a medical provider sues derivatively based on an enrollee's assignment or directly based on independent claims belonging to the provider."); *see also Vrijesh S. Tantuwaya MD, Inc.,* 169 F. Supp. 3d at 1070-71 (claims against FEHBA administrator by medical provider brought in own capacity barred by sovereign immunity); *Ctr. For Reconstructive Breast Surgery, LLC*, 2014 WL 4930443, at *1 (sovereign immunity bars medical providers' claims against FEHBA administrator regardless of whether brought "on behalf of their patients as assignees" or

---

[12]      *See also Vrijesh S. Tantuwaya MD, Inc. v. Anthem Blue Cross Life & Health Ins. Co.*, 169 F. Supp. 3d 1058, 1070-71 (S.D. Cal. 2016); *Mentis El Paso, LLP v. Health Care Serv. Corp.*, 58 F. Supp. 3d 745, 753-56 (W.D. Tex. 2014); *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587 (N.D. Tex. 2014).

"in their individual capacities to seek recovery. . . for claims resulting from their direct interactions with" the FEHBA administrator; sovereign immunity applies to claims "even if brought in [medical providers'] individual capacities"); *Mentis El Paso, LLP*, 58 F. Supp. 3d at 753-57 (medical provider's claims against FEHBA administrator for breach of contract and other theories barred by sovereign immunity).

These decisions follow from the broad types of costs that FEHBA administrators charge to the U.S. Treasury fund under FEHBA contracts.  48 C.F.R. § 1652.216-71(b).[13]  In short, essentially every cost reasonably incurred by Florida Blue in performing its work under the Service Benefit Plan is paid from the U.S. Treasury.[14]  Because the payment Plaintiff seeks in this case would be paid from the federal Treasury, its claims are barred by the federal government's sovereign immunity (which has not been waived).

Separately, Plaintiff's claims also are barred by sovereign immunity because they interfere with OPM's exclusive power to police FEHBA carriers and to seek remedial action by carriers as OPM sees fit.  "Congress . . . adopted an enforcement scheme in FEHBA whereby it delegated the power to police the administration of FEHBA plans to OPM."  *Kight v. Kaiser Found. Health Plans of Mid-Atl. States, Inc.*, 34 F. Supp. 2d 334, 342 (E.D. Va. 1999).  FEHBA delegates to OPM the authority to set standards of conduct for FEHBA carriers, *see* 5 U.S.C. § 8902(e), and FEHBA's implementing regulations vest OPM with the power to penalize carriers

---

[13]     One category is "[b]enefit costs."  *Id.* § 1652.216-71(b)(2)(i). "Benefit costs consist of payments made and liabilities incurred for covered health care services on behalf of FEHBA subscribers."  *Id.* § 1652.216-71(b)(2)(i); *see also* Master Contract § 3.2(b)(2)(i).  A separate category is "[a]dministrative expenses."  *See* 48 C.F.R. § 1652.216-71(b)(2)(ii); *see also* Master Contract § 3.2(b)(2)(ii).  Under that category, FEHBA contractors charge to the U.S. Treasury Fund "all actual, allowable, allocable and reasonable expenses incurred in the adjudication of subscriber benefit claims or incurred in the Carrier's overall operation of the business."  *Id.*; *see also Innova*, 2014 U.S. Dist. LEXIS 12750, at *7, *23-24.

[14]     Chargeable costs include the payment of litigation judgments.  *See, e.g.*, *In re Hirsch Tyler Co.*, ASBCA No. 20962, 76-2 B.C.A. (CCH) ¶ 12,075, 1976 ASBCA LEXIS 123, at *19 (ASBCA Aug. 23, 1976); James P. Bedingfield and Louis I. Rosen, *Government Contract Accounting* 10-38 through 10-39 (2d ed. 1985).

for improper conduct, including by withdrawing approval of a carrier or ordering corrective action for "[u]sing fraudulent or unethical business or health care practices or otherwise displaying a lack of business integrity or honesty."  48 C.F.R. § 1609.7001(c)(2), (d).  And, of course, OPM has implemented a remedy specifically designed to address benefits disputes like the one in this case.  *See* 5 C.F.R. §§ 890.105, 890.107.  Thus, "[b]ecause [Plaintiff's] claims would undoubtedly interfere with the public administration of the Plan" they are barred by sovereign immunity for this additional reason.  *Mentis El Paso*, 58 F. Supp. 3d at 756 n.88.[15]

For these reasons, Plaintiff cannot as a matter of law state a claim based on services rendered to **any** of the five insureds at issue in this action (be they covered under ERISA-governed or FEHBA-governed benefits plans), and its Complaint should be dismissed with prejudice.  But beyond these core grounds for dismissal, Plaintiff's claims suffer from other fatal defects as well.

## III.    Plaintiff Fails to Identify Any Plan Terms That Entitle It to Relief Under Section 502(a)(1)(B)

The Eleventh Circuit recognizes that "§ 502 (a)(1)(B) claims essentially are contract claims."  *Ervast v. Flexible Prods. Co.*, 346 F.3d 1007, 1014 (11th Cir. 2003); *Jones v. Am. Gen. Life & Accident Ins. Co.*, 370 F.3d 1065, 1069 (11th Cir. 2004) (noting that "the remedies explicitly authorized in Section 502(a)(1)(B) . . . are akin to common law breach of contract causes of action").  Thus, actions brought under that provision, such as the single ERISA count in Plaintiff's Complaint, are "limited to those claimants seeking to recover benefits due to [them] under the terms of [the] plan."  *Green v. Holland*, 480 F.3d 1216, 1223-24 (11th Cir. 2007) (noting that courts in this Circuit are "reluctant . . . to imply benefits into the terms of an [ERISA] . . . plan where such benefits are not expressly designated.").

For this reason, like a plaintiff pleading breach of contract, "[a] plaintiff who brings a

---

[15]    Plaintiff brings only federal claims under ERISA.  Had Plaintiff brought state law claims, they would be preempted by FEHBA's express preemption provision, 5 U.S.C. § 8902(m)(1).  *See, e.g., Coventry Health Care of Mo., Inc. v. Nevils*, 137 S. Ct. 1190 (2017); *see also Blue Cross & Blue Shield, Inc. v. Dep't of Banking & Fin.*, 791 F.2d 1501 (11th Cir. 1986).

claim for benefits under ERISA ***must identify a specific plan term*** that confers the benefit in question." *Sanctuary Surgical Ctr., Inc. v. UnitedHealth Group, Inc.*, No. 10-CV-81589, 2013 WL 149356, at *3 (S.D. Fla. Jan. 14, 2013) (granting motion to dismiss because plaintiffs failed to identify a specific plan term alleged to have been breached) (emphasis added); *see also id.* ("[T]o state a plausible ERISA claim, the complaint must 'provide the court with enough factual information to determine whether the services were indeed covered services under the plan.'"); *cf. Ackner v. PNC Bank, Nat'l Ass'n*, No. 16-CV-81648, 2017 WL 7726684, at *3 (S.D. Fla. Aug. 30, 2017) (dismissing breach of contract claim with prejudice for failure to identify provisions of the contract allegedly breached); *In re Managed Care Litig.*, No. 00-1334-MD, 2009 WL 742678 at *3 (S.D. Fla. Mar. 20, 2009) (holding that plaintiffs insufficiently alleged a claim under Section 502(a) for unpaid benefits where "[r]ather than identifying a certain plan term and the alleged violation, the Complaint simply states that Defendants were 'obligated to make certain payments to Plaintiffs' and 'notwithstanding said obligation Defendants have engaged in various acts, contrary to the plans, which resulted in intentional and arbitrary underpayments of benefits'"); *Coles v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, No. 14-CV-142, 2014 WL 12617587, *2-3 (M.D. Fla. June 18, 2014) (dismissing ERISA plan beneficiary's Section 502(a) claim for plan benefits for failure to identify a plan term, holding that a "plaintiff who brings a claim for benefits under ERISA must identify a specific plan term that confers the benefit in question").[16]

---

[16]      Courts nationwide agree.  *See, e.g.*, *LB Surgery Ctr., LLC v. United Parcel Serv. of Am., Inc.*, No. 17-CV-3073, 2017 WL 5462180, at *2 (N.D. Ill. Nov. 14, 2017) ("Failure to specify the allegedly breached plan term is grounds for dismissal."); *Innova Hosp. San Antonio, L.P. v. Blue Cross Blue Shield of Ga.*, No. 12-CV-1607, 2014 WL 10212850, at *4-*6 (N.D. Tex. July 21, 2014) (same); *Simon v. Express Scripts, Inc.*, No. 13-CV-00187, 2014 WL 358706, at *3 & n. 10-12 (W.D. La. Jan. 31, 2014) (same); *Ctr. for Reconstructive Breast Surgery, LLC. v. Blue Cross Blue Shield of La.*, No. 11-CV-806, 2013 WL 5519320, at *1 (E.D. La. Sept. 30, 2013) (same); *Paragon Office Servs., LLC v. UnitedHealthcare Ins. Co.*, No. 11-CV-2205, 2012 WL 5868249 at *2-*3 (N.D. Tex. 2012) (same); *Broad St. Surgical Center, LLC v. UnitedHealth Grp., Inc.*, No. 11-CV-2775, 2012 WL 762498, at *14 (D.N.J. Mar. 6, 2012) (same); *Midwest Special Surgery, P.C. v. Anthem Ins. Co.*, No. 09-CV-646, 2010 WL 716105 at *2-3 (E.D. Mo.

Here Plaintiff only offers that "upon information and belief, the terms of the Plans applicable for every claim at issue in this case dictate that these covered services would be reimbursed in the amount of the provider's billed charges."   Compl. ¶ 26.   This is a quintessential conclusory allegation with no sufficient allegation of fact whatsoever.   In *Sanctuary Surgical*, the Court held that plaintiff's effort to make such an allegation on "information and belief" was insufficient.   *Sanctuary Surgical*, 2013 WL 149356, at *3.   The Court, collecting cases, held that the plaintiff (a medical provider like Plaintiff here) was required "to identify the specific plan provisions under which coverage is conferred with respect to each of the ***996 derivative ERISA patients at issue*** in its complaint, and to allege sufficient facts to plausibly show the services rendered to each patient were indeed covered under that *particular* plan."   *Id.* (emphasis added).   If such a requirement is applicable to a provider's case alleging that extraordinary volume of claims, it surely applies to the instant case as well.   Yet here, Plaintiff fails to identify any plan term allegedly providing him the benefits in question and with which Florida Blue allegedly failed to comply.   This claim must be dismissed.

## IV.   As They Relate to the ERISA Plans *and* FEHBA Plans, Plaintiff's Claims Must Be Dismissed Because Plaintiff Fails to Sufficiently Allege It Exhausted Administrative Remedies

The Complaint should also be dismissed because it fails to adequately plead that Plaintiff exhausted its administrative remedies under the relevant plans, which is a strict condition precedent to seeking relief under ERISA (or on FEHBA-governed plans) in federal court.   *See Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315-16 (11th Cir. 2000) ("[W]e strictly enforce an exhaustion requirement on plaintiffs bringing ERISA claim in federal court").   Dismissal is proper where an ERISA plaintiff "neither plead[s] nor recite[s] *facts* showing that it had exhausted its administrative remedies under the plan."   *Variety Children's Hosp., Inc. v. Century Med. Health Plan, Inc.*, 57 F.3d 1040, 1042 (11th Cir. 1995) (emphasis added)

---

2010) (same); *Steelman v. Prudential Ins. Co. of Am.,* No. 06-CV-2746, 2007 WL 1080656 at *7 (E.D. Cal. Apr. 4, 2007) (same).

(affirming dismissal of ERISA claim where plaintiff inadequately alleged exhaustion of administrative remedies under the pertinent plan and holding general allegation that Plaintiff "complied with 'all conditions precedent' or in the alternative that 'such conditions have been waived or excused'" were insufficient to fulfill the exhaustion requirement); *Byrd v. MacPapers, Inc.*, 961 F.2d 157, 160-61 (11th Cir. 1992) (affirming dismissal for failure to allege exhaustion where "Plaintiff did not allege anything about whether she pursued any available relief under the claims procedures terms of" the plan). Indeed, "to properly plead exhaustion," ERISA plaintiffs must allege *actual facts* about the "action they took to exhaust their administrative remedies and the outcome of the action." *Sanctuary Surgical Ctr., Inc. v. United Healthcare, Inc.*, No. 10-81589, 2011 WL 2134534, at *8 (S.D. Fla. May 27, 2011) (granting motion to dismiss for failure to exhaust administrative remedies where "complaint only allege[d] that plaintiffs 'filed internal appeals'; it d[id] not allege that plaintiffs followed the appeals process to its conclusion or were otherwise prevented from doing so").

On the ERISA plans, each of which prescribes clear administrative processes for disputes and appeals, Plaintiff fails to allege sufficient facts detailing what action was taken under the relevant plan's administrative appeals process or the particular outcome of any such action. Plaintiff only conclusorily alleges appeals were made and responses were unsatisfactory to it. *See* Compl. ¶¶ 37-38 ("Miami Back filed internal appeals with Florida Blue seeking reconsideration of its wrongful decisions . . . Defendant failed to respond to the internal appeals in any meaningful way or in other cases refuse to pay usual and customary charges.") This is fatally insufficient under Eleventh Circuit precedent. *See Variety Children's*, 57 F.3d at 1042, n.2; *Sanctuary Surgical*, 2011 WL 2134534, at *8.

As to the FEHBA plans, the same is true. As set forth above, FEHBA explicitly calls for OPM to decide benefits issues (5 U.S.C. § 8902(j)), and the agency has promulgated detailed regulations for doing so (5 C.F.R. §§ 890.105, 890.107). Plaintiff alleges that it "filed internal appeals with Florida Blue seeking reconsideration of its wrongful decisions." Compl. ¶ 37. That

is the first step in the multi-step administrative remedy process required by OPM's regulations. *See* 5 C.F.R. § 890.105(a)-(d). The next step is for Plaintiff to seek review by OPM. *See id.* § 890.105(e). As a result of amendments to OPM's regulations in 1996, it is clear that this step is mandatory: "If the covered individual seeks further review of the denied claim, the covered individual ***must*** make a request to OPM to review the carrier's decision." *Id.* § 890.105(e)(1) (emphasis added). Plaintiff failed to take that step. The final step is to seek judicial review. *See id.* § 890.107(c). But that option is unavailable unless and until Plaintiff exhausts the remedies in § 890.105 and, even then, the suit must be brought against OPM, not the carrier or its subcontractors. *Id.* § 890.107(c), (d)(1). Again, Plaintiff has failed to comply with this mandatory process. The Eleventh Circuit has held that a failure to exhaust FEHBA's administrative remedy requires dismissal of the enrollee's lawsuit. *See Kobleur v. Grp. Hospitalization & Med. Servs., Inc.*, 954 F.2d 705, 710-11 (11th Cir. 1992). For these reasons as well, Plaintiff's Complaint must be dismissed.

## V. Plaintiff Impermissibly Seeks Legal Relief Under Section 502(a)(1)(B)

As further grounds for dismissal of Count I, Plaintiff seeks an improper type of relief. An action to recover benefits under § 502(a)(1)(B) is purely "equitable in nature." *Hunt v. Hawthorne Assocs., Inc.*, 119 F.3d 888, 907 (11th Cir. 1997) ("The nature of an action under section 502(a)(1)(B) is for enforcement of the ERISA plan. Although the plaintiffs assert that they are claiming money damages, in effect they are claiming the benefits they are allegedly entitled to under the plan. . . . This is traditionally equitable relief." (quoting *Blake v. Unionmutual Stock Life Ins. Co. of Am.*, 906 F. 2d 1525, 1526 (11th Cir. 1990))). The Eleventh Circuit has been clear that a "plaintiff's claim for legal relief (i.e., a money judgment) under section 502(a)(1)(B) fails to state a claim." *Id.* at 908 (dismissing claim for legal remedies under section [502(a)(1)(B)]). Yet, Plaintiff's Complaint says only "Florida Blue's conduct has caused Plaintiff to incur substantial damages. Moreover, Florida Blue's Members continue to seek treatment at Miami Back, therefore, Plaintiff's damages are ongoing" and that Plaintiff,

"demands . . . attorneys' fees and other such relief." Compl. ¶¶ 41, 51. This is pure legal relief and thus,here, as in *Hunt*, Plaintiff fails to make sufficient allegations to plead truly equitable relief.[17] Count I, as pled, fails to seek equitable relief and thus must be dismissed.

## VI.   Plaintiff's Duplicative Count for Declaratory Judgment Should Be Dismissed

Finally, under Count II, Plaintiff alleges "a live controversy exists between Plaintiff and Defendant concerning the parties' rights and responsibilities in connection with insurance claims submitted by Plaintiff to Defendant" and seeks a declaratory judgment asking this Court to determine, "its rights to receive benefits for such services as a result of Defendant's actions," and "the parties' respective rights and obligations under Defendant's ERISA plans," including "whether Defendant is entitled to violate applicable ERISA laws and regulations." Compl. ¶¶ 52-57. This count raises the *same* issues and would require the Court to answer the *same* questions regarding whether Florida Blue was liable on Plaintiff's first cause of action and, if so, in what amount. In other words, regardless of the scope of the remedies sought, the issues on which Plaintiff seeks "declaration" are all subsumed within the issues raised in Plaintiff's first count. Plaintiff's cause of action for declaratory judgment is thus duplicative of Plaintiff's other count and should be dismissed. *See, e.g.*, *Ministerio Evangelistico Int'l v. United Specialty Ins. Co.*, No. 16-CV-25313, 2017 WL 1363344, at *2 (S.D. Fla. Apr. 5, 2017) ("If the determination of [plaintiff's] breach of contract claim involves the same factual dispute as the declaratory relief claim, then . . . the declaratory action must be dismissed.").[18]

---

[17]     While it is theoretically possible for money damages to be either equitable or legal relief, to be equitable the nature of the relief sought in the complaint must be sufficiently pled as "equitable." *See Stephens v. Time Customer Serv., Inc.*, No. 17-CV-1338-T-33, 2017 WL 4792180, at *6 (M.D. Fla. Oct. 24, 2017) (dismissing ERISA claim where plaintiff did not make clear remedy sought was for specific pool of funds allegedly owed "and only through traditional equitable means"). Here it clearly is not.

[18]     *See also Girard v. Am. Sec. Ins. Co.*, 16-CV-61335, 2016 WL 4264054, at *4 (S.D. Fla. Aug. 12, 2016) ("A court must dismiss a claim for declaratory judgment if it is duplicative of a claim for breach of contract and, in effect, seeks adjudication on the merits of the breach of contract claim."); *Fernando Grinberg Trust Success Int. Props. LLC v. Scottsdale Ins. Co.*, No.

## CONCLUSION

For the foregoing reasons, the Court should enter an Order granting this Motion and dismissing the Complaint with prejudice.

Dated April 5, 2019.

Respectfully submitted,

By: */s/ Allen P. Pegg*           
Allen P. Pegg
Florida Bar No. 597821
Daniel Balmori
Florida Bar No. 0112830
HOGAN LOVELLS US LLP
600 Brickell Avenue, Suite 2700
Miami, FL 33131
Telephone: 305-459-6500
Facsimile:  305-459-6550

allen.pegg@hoganlovells.com
daniel.balmori@hoganlovells.com

*Counsel for Blue Cross and Blue Shield of Florida, Inc. d/b/a Florida Blue*

---

10-CV-20448, 2010 WL 2510662, at *1 (S.D. Fla. June 21, 2010) ("[A] trial court should not entertain an action for declaratory judgment on issues which are properly raised in other counts of the pleadings and already before the court, through which the plaintiff will be able to secure full, adequate and complete relief.") (quotations omitted)); *Regency of Palm Beach, Inc. v. QBE Ins. Corp.*, No. 08-CV-81442, 2009 WL 2729954 (S.D. Fla. Aug. 25, 2009) (dismissing state law declaratory relief claim as "duplicitous [*sic*] of the relief sought in Regency's breach of contract counts" because "asking the Court to determine whether the Contract has been breached and if so, to judicially declare the amount of damages" is "an inappropriate prayer for relief in a cause for declaratory relief"); *Eisenberg v. Standard Ins. Co.*, 09-CV-80199, 2009 WL 1809994, at ** 2-3 (S.D. Fla. June 25, 2009) (dismissing declaratory judgment complaint that "ask[ed] the Court to make factual determinations regarding possible breaches of contract that [defendant] is alleged to have committed" because "questions regarding whether a contract was adequately performed is unrelated to the purpose behind the Declaratory Judgment Act," which is to "clarify the legal relations at issue and to settle controversies *prior* to a legal breach of duty or contract") (emphasis in original).

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on April 5, 2019 a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF.   Copies of the foregoing document will be served upon interested counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: */s/ Allen P. Pegg*_____
Allen P. Pegg
Florida Bar No. 597821