UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 19-20455-CIV-MORENO

GVB MD, LLC d/b/a MIAMI BACK AND
NECK SPECIALISTS,

        Plaintiff,

vs.

BLUE CROSS AND BLUE SHIELD OF
FLORIDA, INC. d/b/a FLORIDA BLUE,

        Defendant.
_____/

## ORDER GRANTING MOTION TO DISMISS AND CLOSING CASE

THIS CAUSE came before the Court upon Defendant's Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim. The Court has considered the motion, the response in opposition, the reply, the pertinent portions of the record, and being otherwise fully advised in the premises, it is ADJUDGED that the motion to dismiss the amended complaint is GRANTED, and the case is DISMISSED WITH PREJUDICE due to Plaintiff's lack of standing.

## I. BACKGROUND

This case essentially deals with a contract dispute arising under the Employee Retirement Income Security Act of 1974 ("ERISA") § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Plaintiff Miami Back and Neck Specialists, "a medical practice that performs spine surgery and other related treatments on its patients in licensed health care facilities throughout the State of Florida," brings forth two claims for breach of contract and declaratory judgment against Defendant Blue Cross and Blue Shield of Florida related to an alleged denial of insurance benefits arising under an ERISA plan. Plaintiff avers in its amended complaint that on various dates, its doctors

performed spine surgery and related services on three patients, whose initials are A.S., A.V., and A.P., and that Defendant has failed to pay, or has woefully underpaid, "for the covered services in an amount equal to the provider's billed charges, or the usual, customary, and reasonable rate for the services provided, less the Patient Responsibility under the terms of the applicable Plan."

Plaintiff is "a non-participating, out-of-network provider" that does not have an express contract with the Defendant. Nevertheless, it proceeds on its causes of action alleging that the three patients it treated assigned their benefits from their ERISA plans to the Plaintiff. "As part of the intake and admissions process at Miami Back, the Members [i.e., patients] execute[d] written assignment of benefits, assigning their rights to receive health benefits under any applicable Plans to Miami Back." Plaintiff notes that before initiating suit, it filed internal appeals with Defendant seeking reconsideration of its claims, and that "Defendant failed to respond to the internal appeals in any meaningful way."[1] Now, "[a]s Assignee of the Plans, Plaintiff is entitled to recover benefits due to the Members and enforce the rights of the Members under the terms of the Plans."

In response, Defendant filed a motion to dismiss, arguing, among other things, that Plaintiff lacks standing to sue because the assignments of benefits were invalid. Defendant attached to its motion each of the three insureds' health benefits plans, and pointed to anti-assignment language in each. All three plans similarly state that "[e]xcept as set forth the in last paragraph of this section, we will not honor any of the following assignments, or attempted assignments, by you to any Provider: an assignment of the benefits due to you for Covered Services under this Benefit Booklet; an assignment of your right to receive payments for Covered Services under this Benefit

---

[1] The Court takes no view on whether Plaintiff, as a condition precedent to filing suit, exhausted its administrative remedies. *See Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315 (11th Cir. 2000) ("Our law is well-settled that 'plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court.'" (quoting *Counts v. Am. Gen. Life & Accident Ins. Co.*, 111 F.3d 105, 108 (11th Cir. 1997))). The analysis is unnecessary given the Court's present disposition of the case.

2

Booklet; or an assignment of a claim for damage resulting from a breach, or an alleged breach, of the Group Master Policy." Plaintiff contests dismissal by arguing that Defendant, through its prior course of dealings, waived or is estopped from relying on the anti-assignment provisions. Prior to litigation, Plaintiff claims that the Defendant failed to ever raise the issue of the anti-assignment provisions during the internal appeals process, and that the Defendant all but recognized the assignments when it made direct payments under the plans to Plaintiff instead of the insureds.

The Court now evaluates the motion to dismiss.

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead sufficient facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To establish a facially plausible case, a plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. In considering a Rule 12(b)(6) motion, the Court construes the complaint in a light most favorable to the non-movant and accepts all allegations of facts as true. *Twombly*, 550 U.S. at 555-56. Plaintiff need not provide "detailed factual allegations," but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## III. ANALYSIS

### A. Plaintiff Lacks Standing to Sue Pursuant to the Anti-Assignment Provisions

Upon review of the record, the Court agrees that for the reasons cited in the motion to dismiss, Plaintiff lacks standing to sue under the unambiguous terms of the insureds' health plans.

As the Eleventh Circuit Court of Appeals recently reaffirmed, "[t]o maintain an action under ERISA, a plaintiff must have standing to sue under the statute, which is not jurisdictional, Article III standing, but a right to make a claim under the statute." *Griffin v. Coca-Cola Enters., Inc.*, 686 F. App'x 820, 821 (11th Cir. 2017) (citing *Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1293-94 (11th Cir. 2004)). Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), generally two categories of persons have a right to make a claim under an ERISA plan: plan beneficiaries and plan participants.[2] Healthcare providers, like the Plaintiff, are typically not plan beneficiaries or participants, and thus lack independent standing to sue. *See Coca-Cola Enters.*, 686 F. App'x at 821; *Physicians Multispecialty Grp.*, 371 F.3d at 1294. The Eleventh Circuit recognizes, however, that healthcare providers may contractually obtain derivative standing through a written assignment of benefits by a plan beneficiary or participant. *Coca-Cola Enters.*, 686 F. App'x at 821-22; *Physicians Multispecialty Grp.*, 371 F.3d at 1294.

But the Eleventh Circuit also recognizes, fatal to the Plaintiff's claims, that "an unambiguous anti-assignment provision in an ERISA-governed welfare benefit plan is valid and enforceable, and will operate to void the assignment. If there is such an unambiguous anti-assignment provision, the healthcare provider will lack derivative standing and cannot maintain the ERISA action." *Coca-Cola Enters.*, 686 F. App'x at 821-22. Just as Defendant argues, there is a clear anti-assignment provision in each of the three patients' health plans. The provisions similarly state, in no uncertain terms, that "[e]xcept as set forth the in last paragraph of this section,

---

[2] ERISA defines "beneficiary" to mean "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). Meanwhile, ERISA defines "participant" as "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7).

4

we will not honor any of the following assignments, or attempted assignments, by you to any Provider: an assignment of the benefits due to you for Covered Services under this Benefit Booklet; an assignment of your right to receive payments for Covered Services under this Benefit Booklet; or an assignment of a claim for damage resulting from a breach, or an alleged breach, of the Group Master Policy." Underscoring the point, other sections of the plans also advise that any assignments made without the written authorization of the Defendant would be null and void.[3]

Accordingly, because the plans contain straightforward anti-assignment provisions, and the Court must interpret those provisions by their "plain and ordinary meaning," *see Alexandra H. v. Oxford Health Ins. Inc. Freedom Access Plan*, 833 F.3d 1299, 1307 (11th Cir. 2016) (applying that same standard to the interpretation of an ERISA policy), the Court finds that Plaintiff lacks standing to assert its claims. *See Coca-Cola Enters.*, 686 F. App'x at 822 (dismissing an ERISA claim for lack of standing under the plan's unambiguous language); *Griffin v. Verizon Commc'ns, Inc.*, 641 F. App'x 869, 872-73 (11th Cir. 2016) (similar); *Griffin v. Publix Super Markets, Inc.*, No. 8:16-cv-01243, 2016 WL 8999466, at *2 (M.D. Fla. Aug. 2, 2016) (similar).

### B. Plaintiff's Waiver and Estoppel Arguments Fail as a Matter of Law

Perhaps sensing that its claims are precluded by the relevant anti-assignment provisions of the policies, Plaintiff points to the Defendant's prior "course of dealing" to argue that Defendant is either estopped or has waived reliance on the provisions. Both the waiver and estoppel arguments are premised on the alleged fact that during the internal appeals process, the Defendant never raised the issue of the anti-assignments provisions as the reason for denying or reducing

---

[3] For instance, A.P. and A.V.'s plans additionally provide that "[y]ou may not assign, delegate or otherwise transfer this Group Master Policy and the obligations without our written consent. Any assignment . . . made in violation of this provision shall be void." A.S.'s plan, meanwhile, similarly cautions that "[y]our obligations arising hereunder may not be assigned, delegated or otherwise transferred without the written consent of [Defendant]." The plan then states in bold letters, two sentences later, that "**[a]ny assignment, delegation, or transfer made in violation of this provision shall be void.**"

5

benefits payments. Addressing the equitable estoppel argument first, "[e]stoppel exists when the conduct of one party has induced the other party to take a position that would result in harm if the first party's acts were repudiated." *Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1347 (11th Cir. 1994). "Under ERISA equitable estoppel applies only when 'the plaintiff can show that (1) the relevant provisions of the plan at issue are ambiguous, and (2) the plan provider or administrator has made representations to the plaintiff that constitute an informal interpretation of the ambiguity.'" *Verizon Commc'ns, Inc.*, 641 F. App'x at 874 (quoting *Jones v. Am. Gen. Life & Acc. Ins. Co.*, 370 F.3d 1065, 1069 (11th Cir. 2004)). As noted above, the plans at issue are not ambiguous, nor does Plaintiff ever argue that they are. Thus, Plaintiff's estoppel claim based on non-disclosure fails. *See Jones*, 370 F.3d at 1071 ("[B]ecause the [ERISA] Plan is unambiguous, the Appellants cannot make out a prima facie case of equitable estoppel.").

As for Plaintiff's implied waiver argument, it too fails. "Waiver is the voluntary, intentional relinquishment of a known right." *Glass*, 33 F.3d at 1347. "Where a party alleges an implied waiver, 'the acts, conduct, or circumstances relied upon to show waiver must make out a clear case'" of intentional relinquishment. *Witt v. Metro. Life Ins. Co.*, 772 F.3d 1269, 1279 (11th Cir. 2014) (quoting *In re Garfinkle*, 672 F.2d 1340, 1347 (11th Cir. 1982)). Here, Plaintiff does not "make out a clear case" of waiver. *Id.* That the Defendant did not raise the anti-assignment provisions during the internal appeals process when it denied or reduced payments does not necessarily mean that the Defendant intentionally relinquished its rights under the policy. Further, as in *Martinez-Claib v. Business Men's Assurance Co. of Am.*, 349 F. App'x 522 (11th Cir. 2009), an insurance company that denies a claim based on one plan provision is entitled to assert, once litigation commences, that coverage would have been denied pursuant to other provisions. *Id.* at 525; *see also Griffin v. Blue Cross & Blue Shield of Ala.*, 157 F. Supp. 3d 1328, 1334 (N.D. Ga.

2015) ("[A]s in *Martinez-Claib*, the failure to recognize the anti-assignment provision as reason for denial of the payment to Dr. Griffin throughout the appeals process—in which Plaintiff allegedly submitted the assignment 9 times—also does not suffice to allege an implied waiver.").

Plaintiff's next argument, that Defendant's direct payments to Plaintiff also constituted waiver or estoppel, fails. Estoppel is unpersuasive because, as noted above, the language of the contract is unambiguous. *See Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 523 (6th Cir. 2010) (holding that direct payments to a healthcare provider do not create a "viable estoppel claim" when the relevant health insurance plan clearly prohibits assignment); *Blue Cross & Blue Shield of Ala.*, 157 F. Supp. 3d at 1331-32 (similar). As for waiver, courts have consistently found that direct payments are insufficient to demonstrate an intentional relinquishment of rights. *See Blue Cross & Blue Shield of Ala.*, 157 F. Supp. 3d at 1334 ("As in *Glass*, the allegation that Defendants made a direct payment to Plaintiff—albeit for an allegedly insufficient amount—does not equate to an implied waiver."); *see also Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc.*, No. 13-cv-6551, 2014 WL 4058321, at *3 (S.D.N.Y. Aug. 15, 2014) ("Plaintiffs argue that defendants waived the anti-assignment provisions by providing direct payment to plaintiffs . . . . [But] [h]ealth insurance companies routinely make direct payments to healthcare providers without waiving anti-assignment provisions.").

Finally, in advancing its waiver and estoppel arguments, Plaintiff makes passing reference to section 627.638(2), Florida Statutes (2019), which seemingly forbids anti-assignment provisions. The statute states that "[w]henever, in any health insurance claim form, an insured specifically authorizes payment of benefits directly to any . . . physician . . . the insurer shall make such payment to the designated provider of such services. The insurance contract may not prohibit, and claims forms must provide for, the payment of benefits directly to a licensed . . . physician."

7

§ 627.638(2), Fla. Stat. (2019). Although not explicit, Plaintiff appears to obliquely argue that the statute prohibits the anti-assignment provisions in this case. Because Plaintiff's allusion to the statute is, at best, fleeting and vague, the Court declines to allow Plaintiff's ERISA claim to proceed under this statute. But, even to the extent that Plaintiff's argument is well-understood, the Court is not aware of a single authority that compels the Court to rule that section 627.638(2) invalidates the anti-assignment provisions in contracts governed by ERISA.[4]

While the Court declines to take a position regarding whether Defendant was mandated to comply with section 627.638(2), the Court notes that a party compelled by statute to undertake a certain course of action is not automatically estopped from enforcing and does not automatically waive existing contractual rights due to having acted in compliance with the law. Both parties agree that the insureds authorized payment to the Plaintiff. But, that payment, without more, is not synonymous with an act condoning an assignment of benefits or an act enabling the Plaintiff to bring a claim under ERISA, especially where, as here, the health plans unambiguously proscribe an assignment of benefits, and that, in any event, the Defendant "reserve[s] the right to honor an assignment" made pursuant to section 627.638(2).[5] Moreover, the anti-assignment provisions, found on the Patient Intake and Information Packet, assign only "benefits" and "payment[s],"

---

[4] Although there is scant case law interpreting section 627.638(2), the case law there is suggests the anti-assignment provisions in the applicable health insurance plans are enforceable. *See, e.g., Baker Cty. Med. Servs. Inc. v. Blue Cross & Blue Shield of Fla., Inc.*, No. 3:18-cv-01510, 2019 WL 5104773, at *5 (M.D. Fla. Sept. 19, 2019) ("ERISA-regulated plans control the payment of benefits, coverage determinations, obligation to pay for benefits, and whom may be paid directly by insurers. Therefore § 627.638 creates no duty independent of ERISA. . . . The Eleventh Circuit has implicitly recognized ERISA preemption of a state law mandating the recognition of assignments." (citing *Griffin v. Health Sys. Mgmt.*, 157 F. Supp. 3d 1282, 1286 (N.D. Ga. 2015) *and Physicians Multispecialty Grp.*, 371 F.3d at 1295)).

[5] This interpretation of the anti-assignment provisions in harmony with section 627.638(2) is buttressed by the language of the policies requiring their interpretation in conformity with Florida law: "[t]he terms of coverage and benefits to be provided by us under the Group Master Policy shall be deemed to have been modified and shall be interpreted, so as to comply with applicable state . . . laws and regulations . . . ."

detailing nothing about whether the patient was assigning the right to sue under ERISA. *See Griffin v. Gen. Mills, Inc.*, 157 F. Supp. 3d 1288, 1292 (N.D. Ga. 2015) (holding that even if the assignment of benefits was valid, "under a narrow reading, the assignment of mere 'benefits' under the [ERISA] Plan would not provide Plaintiff with the right to bring a claim against the Plan for failure to produce documents—or any other claim for civil penalties under ERISA.").

## IV. CONCLUSION

Because the purported assignments of benefits by the insureds were void under the health insurance policies at issue, which contain unambiguous anti-assignment provisions, the Plaintiff lacks derivative standing to bring forth its ERISA claims. Without the assignments, Plaintiff is neither a plan participant nor beneficiary, and thus has no independent standing to sue.

Accordingly, based on the above, it is ADJUDGED that the motion to dismiss is GRANTED, and the amended complaint is DISMISSED WITH PREJUDICE for lack of standing. The case is CLOSED.

DONE AND ORDERED in Chambers at Miami, Florida, this 12th of November 2019.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

9